UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN DENNIS GOODE,<br><br>                              Plaintiff,<br>vs.<br>J. CANEDO, et al.,<br><br>                              Defendants. | Case No.: 3:21-cv-2054-GPC-KSC<br><br>**ORDER GRANTING DEFENDANT CANEDO'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**<br><br>[ECF No. 68] |

Before the Court is a Motion for Summary Judgment filed by Defendant J. Canedo on February 29, 2024. ECF No. 68. For the reasons discussed below, the Court **GRANTS** Defendant Canedo's motion and directs the Clerk of Court to entry judgment in his favor.

I.    BACKGROUND

A.    **Procedural History**

On December 9, 2021, Goode filed a civil rights complaint, pursuant to 42 U.S.C. § 1983, alleging violations of the Eighth Amendment and seeking injunctive relief and money damages. ECF No. 1. After the Court dismissed the original complaint, Goode filed a first amended complaint ("FAC") on January 19, 2023. ECF No. 18. In it, Goode alleged that while he was an inmate at R.J. Donovan Correctional Facility ("RJD"), Defendant

Canedo violated his Eighth Amendment rights when (1) Canedo directed Goode's transfer to COVID-19 isolation when Goode was not positive for the virus, and (2) Canedo ordered the removal of Goode's continuous positive airway pressure ("CPAP") machine. *See generally*, *id.*

On October 5, 2024, Canedo filed a motion for judgment on the pleadings. ECF No. 50. This Court granted the motion in part and denied it in part on November 11, 2024. ECF No. 61. Specifically, the Court granted Defendant's motion as to Goode's claim related to the removal of his CPAP machine but denied it as to Goode's claim regarding his December 13, 2020 transfer to COVID isolation. *See id.* at 7. Goode subsequently filed his own motion for judgement on the pleadings on January 26, 2024 (ECF No. 62), which this Court denied on April 5, 2024. ECF No. 74

On February 29, 2024, Canedo filed the instant Motion for Summary Judgement on Goode's remaining Eighth Amendment claim. ECF No. 68. After being notified of the requirements for opposing summary judgment (ECF No. 71), Goode filed his opposition on March 25, 2024. ECF No. 73. Canedo did not file a reply.

B.   **Undisputed Material Facts**

On summary judgment, facts must be viewed in the light most favorable to the nonmoving party, in this case Goode.[1] *See Wright v. Beck*, 981 F.3d 719, 726 (9th Cir. 2020). Unless otherwise indicated, the facts below are not disputed.

In December 2020, RJD was experiencing its "first wave of COVID-19 outbreaks." Declaration of S. Roberts in Supp. of Mot. for Summ. J., ECF No. 68-5 (hereafter "Roberts Decl.") at ¶ 4. At that time, RJD and California Department of Corrections and Rehabilitation ("CDCR") staff were developing protocols for the reporting and transferring of inmates who had contracted, or been exposed to, the virus in an effort to slow its spread.

---

[1] Because Goode's FAC is verified, it "may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).

1  *Id.* According RJD's Chief Medical Executive, "it was a chaotic time." *Id.*

2  Under the protocol in place at RJD on December 13, 2020, "medical staff of incident command would receive [COVID-19] test results and communicate to custody staff on incident command [which inmates] would be transferred to quarantine or isolation." *Id*. A custody document called a medical classification chronology ("MCC") would be created and placed on the Strategic Offender Management System ("SOMS"). *Id*. Under this protocol, inmates who medical staff determined to be COVID-19 positive were ordered transferred to isolation and inmates who had been exposed to COVID-19 were transferred to quarantine. *Id.*; *see also* at Declaration of J. Canedo in Supp. Summ. J, ECF No. 68-6 (hereafter "Canedo Decl.") at ¶ 3. Custody staff, who carried out the transfers, did not make medical decisions and were expected to follow through on the transfer order contained in the MCC. Roberts Decl. at ¶ 5; *see also* Canedo Decl. at ¶ 3. Custody staff did not have access to an inmate's medical records and "could only rely on the medical classification chronologies available in SOMS to verify that an inmate was ordered by medial staff to transfer." *Id*.

In December 2020, Canedo was assigned as an RJD "correctional captain." Canedo Decl. at ¶ 1. In that capacity, Canedo periodically received a list of inmates who medical staff ordered transferred to COVID-19 isolation or quarantine, along with a copy of the MCC ordering the transfer. *Id.* at ¶ 3. Canedo was also able to access an inmate's MCC by checking SOMS. Beyond what was contained in the MCC, Canedo had no access to information regarding the inmate's medical status. *Id.* at ¶ 4. Canedo had no medical education or training and it was not part of his duties to make medical decisions or orders regarding the relocation of an inmate to COVID-19 isolation or quarantine. *Id.* at ¶ 5.

On December 9, 2020, Goode tested negative for COVID-19. ECF No. 18-1 at 54; *see also* FAC at 3; Declaration of D. Duan in Supp. of Mot. for Summ. J. ECF No. 68-4, Ex. 2 (hereafter "Pl.'s Depo.") at 9–10. On December 13, 2020, Canedo received an MCC ordering Goode's transfer to isolation. Canedo Decl. at ¶ 6; *see also id.* at Ex. 1. The MCC indicated that Plaintiff was classified for "temporary medical hold," and "temporary

medical isolation." Canedo Decl., Ex. 1. It also included the notation: "Isolation COVID CONFIRMED until 12/27/2020." *Id*. The information contained MCC was all Canedo had to rely upon as the basis for Goode's transfer to isolation on December 13, 2020. Canedo Decl. at ¶¶ 6, 9.

As a correctional captain, Canedo relied on other correctional staff to carry out the transfers. *Id.* at ¶ 7. On the evening of December 13, 2020, Correctional Officers Meza and Freeman came to Goode's cell to carry out the transfer. FAC at 3; *see also* Pl.'s Depo. at Freeman told Goode he was being transferred to "D-Gym," where COVID-19-positive inmates were being isolated. FAC at 3. Goode told Freeman there must be a mistake because he had recently tested negative. *Id.*; *see also* Pl.'s Depo. at 12. Officer Freeman radioed Sergeant Canedo.[2] Goode overheard Freeman telling Canedo over the radio that Goode claimed to have tested negative for COVID-19. *See* FAC at 3, 8; Pl.'s Depo at 17. Canedo responded, "Tell him to roll up. He's leaving to go to D-Yard." Pl.'s Depo. at 18. Goode believed Canedo "was the only CDCR employee that was involved in [his transfer] that was high enough rank to have performed the move." FAC at 12. Goode, however, did not know whether Canedo was responsible for the decision to transfer him. *See* Pl.'s Depo. at 24. He also did not know if Canedo had the authority to override a decision made by medical staff. *Id.* at 24–25.

Plaintiff was moved to the isolation area in D-Gym, where COVID-19 positive inmates were held. FAC at 3. At that time, there were 30–40 inmates in the gym, many of whom were coughing, sneezing and sweating. ECF No. 18-1 at 77. Bunk beds were spread across the gym, approximately four feet apart, and Plaintiff was assigned a bottom bunk. *Id*. The bunk above him was occupied by "an inmate who seemed to be extremely sick," and who "would lean over the side of the bed and c[o]ugh downward . . . all night." *Id*.

---

[2] Canedo attests he does not specifically recall Freeman contacting him but states that he "could have been alerted to an issue via the radio." Canedo Decl. at ¶ 7. Had that happened, Canedo states, it would have been his practice to check the MCC on SOMS to confirm the order. "If the [MCC] indicated transfer, then I would need to follow the [MCC's] order." *Id.* at ¶ 8.

Goode feared he would contract COVID-19 and possibly die. FAC at 9.

The next morning, December 14, 2020, an unnamed sergeant supervising D-Gym "check[ed] with medical and discover[ed] Plaintiff's last [COVID-19] test [had been] negative." *Id.* at 12. The sergeant told Plaintiff a "mistake" had been made and "immediately moved" Goode out of D-Gym and into quarantine in the Observation Housing Unit. *Id.* Goode asked if he could go back to his cell, but the sergeant informed him that because there was a chance Goode had been exposed to the virus during his time in D-Gym, he must go to quarantine. *Id.* at 12; *see also* Pl.'s Depo. at 22. Goode assumed he would only be in quarantine for 14 days, but he was ultimately there for 56 days. FAC at 19, *see also* Pl.'s Depo. at 20.

Plaintiff did not contract COVID-19 while in isolation or quarantine. *See* Pl's Depo. at 22. However, after the night spent in the "highly infected gym," and the subsequent 56 days in quarantine, Goode developed, and has been diagnosed with, Post-Traumatic Stress Disorder ("PTSD"). FAC at 9, 14. He suffers from stress and anxiety that prevent him from sleeping. *Id*. at 4. When he does sleep, he has "nightmares where he cannot save himself from choking." *Id*. He also suffers from hormonal imbalances, his "glands [are] constantly issuing too much adrenaline and other chemicals because he is in constant fear of a life[-] threatening situation," and his "body weight has changed drastically." *Id*. at 4–5.

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Canedo seeks summary judgment, arguing there is no triable issue as to whether he violated Goode's Eighth Amendment rights when he participated in carrying out the December 13, 2020 order that Goode be transferred to COVID-19 isolation. *See generally,* Def.'s Mem. of P. & A. Supp. Mot. for Summ. J., ECF No. 68-1 (hereafter "Def.'s P. & A.").

### A. Summary Judgment Standard

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). While Goode bears the burden of proof

at trial, Canedo, as the moving party, bears the initial burden of informing a court of the basis for his motion and of identifying the portions of the record that demonstrate an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If Defendant Canedo meets his initial responsibility, the burden then shifts to Goode to establish a genuine dispute as to any material facts that exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To do so, Goode must present evidence in the form of affidavits and/or admissible discovery material to support his contention that a genuine dispute of material fact exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11. "A [p]laintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14. (9th Cir. 2000).

Finally, district courts must "construe liberally motion papers and pleadings filed by pro se inmates and . . . avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise a genuine factual dispute and defeat summary judgment. *Soremekun v. Thrifty Payless, Inc*., 509 F.3d 978, 984 (9th Cir. 2007). If Plaintiff "fails to properly support an assertion of fact or fails to properly address [Defendant's] assertion of fact, as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . .." Fed. R. Civ. P. 56(e)(2). A "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'" *Anderson*, 477 U.S. at 249–50; *Hardage v. CBS Broad. Inc.*, 427 F.3d 1177, 1183 (9th Cir. 2006).

/ / /

C.   **Discussion**

In his motion, Canedo argues summary judgment is required as to Goode's sole Eighth Amendment claim because there is no genuine dispute of material fact that he acted without deliberate indifference to Goode's health and safety when he directed Goode's transfer to COVID-19 isolation. He further contends there is no genuine dispute he was not the proximate cause of Goode's injuries. Finally, Canedo states he is entitled to qualified immunity. *See generally*, Def.'s P. & A., ECF No. 68-1.

In his Opposition, Goode argues a genuine dispute exists because Canedo "knew" he was negative for COVID-19 and that Canedo's actions were the cause of his injuries because Canedo directed his transfer to COVID-19 isolation.[3] *See* Pl.'s Opp. to Def.'s M. for Summ. J, ECF No. 73 ("hereafter Pl.'s Opp.) at 9–11, 14, 17.

1.   ***Eight Amendment Standard***

Two requirements must be met to show an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "First, the deprivation must be, objectively, sufficiently serious." *Id*. (internal quotation marks and citation omitted). Second, "prison officials must have a sufficiently culpable state of mind," which for conditions of confinement claims, "is one of deliberate indifference." *Id*. (internal quotation marks and citation omitted).

"[T]o satisfy the objective prong, it is enough for the inmate to demonstrate that he was exposed to a substantial risk of some range of serious harms; the harm he actually suffered need not have been the most likely result among this range of outcomes." *Lemire*

---

[3] Goode also appears to argue Defendant's summary judgment motion is untimely because it was filed "past the 30-day limitation after closing of discovery." ECF No. 73 at 2. Federal Rule of Civil Procedure 56(b) specifies that 30 days after the close of discovery is the default deadline for a summary judgment motion "[u]less a different time is set by local rule of the court orders otherwise." Fed. R. Civ. P. 56(b). Here, the Court's June 14, 2023 Scheduling Order set a February 29, 2024 deadline for filing dispositive motions, including motions for summary judgment. ECF No. 54 at 4. Canedo filed the instant motion on February 29, 2024 and therefore it is timely. *See* Fed. R. Civ. P. 56(b).

*v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1076 (9th Cir. 2013). Here, Defendant does not dispute that exposure to individuals infected with COVID-19 poses a substantial risk of serious harm. *See Plata v. Newsom*, 445 F. Supp. 3d 557, 559 (N.D. Cal. Apr. 17, 2020) ("[N]o one questions that [COVID-19] poses a substantial risk of serious harm" to prisoners.). Thus, the question here is whether Canedo acted with deliberate indifference.

Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety *Farmer*, 511 U.S. at 837. The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2006). Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. *Farmer*, 511 U.S. at 835; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

The standard for deliberate indifference is subjective, requiring the plaintiff to show the defendant had a "sufficiently culpable state of mind." *See Wilson v. Seiter*, 501 U.S. 294, 297 (1991). To do so here, there must be a genuine dispute as to whether Canedo knew Goode faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable steps to abate it. *Farmer*, 511 U.S. at 837. Put another way, the evidence must show Canedo was (1) aware of facts from which the inference could be drawn that a substantial risk of serious harm existed if Goode was moved to isolation and (2) he actually drew that inference. *Id*. If the evidence merely shows Canedo should have been aware of the risk but was not, he has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002) (overruled on other grounds by *Castro v. County of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016)).

2.   **Deliberate Indifference**

Defendant argues there is no genuine dispute he lacked the subjective knowledge required to show he acted with deliberate indifference when he directed Goode's move to

isolation. *See* Def.'s P. & A. at 10–15.

Canedo points to undisputed evidence which shows that on December 13, 2020, medical staff at RJD prepared an MCC, noting Goode was positive for COVID-19 and ordering his transfer to isolation[4] until December 27, 2020. Canedo Decl., Ex. 1; *see also* Goode Depo. at 25. In accordance with the protocol in place at the time, Canedo relied on the information and order contained in the MCC when he directed Goode's transfer. Canedo Decl. at ¶ 10; *see also* Roberts Decl. at ¶ 5. Based on this reliance, Canedo would have had no reason to believe Goode's transfer to isolation, where he would be held among other COVID-19-positive inmates, would present a risk to Goode's health and safety because according the MCC, Goode was already positive for the virus. Indeed, given his belief Goode was positive for COVID-19,[5] had Canedo not followed the order, he may have risked the health and safety of other inmates and staff. *Cf. Wakefield v. Thompson*, 177 F.3d 1160, 1165 (9th Cir. 999) ("Following *Estelle*, we have held that a prison official acts with deliberate indifference when he ignores the instructions of the prisoner's treating physician or surgeon.").

Furthermore, federal courts have found that non-medical personnel are generally entitled to rely on the opinions of medical professionals with respect to an inmate's treatment. *See, e.g.*, *McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013) (holding that non-medical personnel may rely upon medical opinions of healthcare professionals unless "they

---

[4] In his Opposition, Plaintiff states that his transfer to "D-Gym, a highly contagious group quarantine unit," was inconsistent with the MCC's order that he be sent to "isolation." Pl.'s Opp. at 9, 11. This contention, however, is based on a misunderstanding of the difference between quarantine and isolation. As noted above, the term "isolation" refers to areas (such as D-Gym) where infected inmates were held, while "quarantine" denotes areas where inmates suspected of being exposed to the virus were held. *See* Roberts Decl. at ¶ 4.

[5] While in hindsight there is no dispute the MCC erroneously stated Goode was positive for COVID-19 (*see* ECF No. 18-1 at 54), there is no evidence in the record the error was intentional. Negligence and even gross negligence are not enough to amount to an Eighth Amendment violation. *Farmer*, 511 U.S. at 835.

1  have a reason to believe (or actual knowledge) that prison doctors or their assistants are
2  mistreating (or not treating) a prisoner") (internal quotations and citations omitted); *Mercer*
3  *v. Athens Cnty., Ohio*, 72 F.4th 152, 162–63 (6th Cir. 2023) ("[A] non-medically trained
4  officer does not act with deliberate indifference to an inmate's medical needs when he
5  'reasonably deferred to the medical professionals' opinions.'"); *Snell v. Neville*, 998 F.3d
6  474, 498 (1st Cir. 2021) (same); *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) ("If a
7  prisoner is under the care of medical experts . . . a non-medical prison official will generally
8  be justified in believing that the prisoner is in capable hands."); *Hamby v. Hammond*, 2015
9  WL 1263253, at *27 (W.D. Wash. Feb. 11, 2015) (holding that non-medical corrections
10 officials are generally entitled to rely on judgment of prison medical staff). Thus, the Court
11 finds Canedo satisfied his initial burden by demonstrating an absence of a genuine dispute
12 as to his lack of subjective knowledge of a risk to Goode's health and safety.

13 In his Opposition, Goode asserts Canedo "knew" he did not have COVID-19
14 because he told Officer Freeman he was negative for the virus and Freeman relayed that
15 information to Canedo over the radio. *See* Pl's Opp. at 5–6. But deliberate indifference is
16 not established by merely showing that a defendant was informed of a potential risk, it
17 requires an actual perception of a risk by the defendant. *See Farmer*, 511 U.S. at 836 &
18 n.4. Thus, even assuming Canedo was aware Goode had insisted the information in the
19 MCC was erroneous and he was, in fact, negative for COVID-19, the uncontroverted
20 evidence in the record shows Canedo actually relied on the information in the MCC and
21 presumed its accuracy. Goode points to no evidence to the contrary beyond his own
22 speculation.[6] *See Soremekun*, 509 F.3d at 984 (stating conclusory, speculative testimony
23 in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat
24 summary judgment).

---

[6] In his Opposition Plaintiff speculates that Canedo got "someone to fabricate the medical classification chronology" but points to no evidence in the record to support such a claim. Pl.'s Opp. at 11.

In addition, Goode admits he was not aware of RJD's protocol for moving inmates at that time. Pl.'s Depo. at 19, 24. And he does not dispute that Canedo was unable to access his medical records or otherwise confirm his COVID-19 test results. *Id.* at 24–25; *see also* Roberts Decl. at ¶ 5. Nor does he dispute that under RJD's protocol, Canedo was without authority to override the transfer order contained in the MCC. Pl.'s Depo. at 24–25; *see also*, Canedo Decl. at ¶ 9, Ex. 1; Roberts Decl. at ¶ 5. In short, Plaintiff has failed to satisfy his burden by pointing to evidence in the record which raises a genuine dispute that Canedo lacked actual knowledge of a risk to his health and safety.

Therefore, after reviewing all the evidence presented in the light most favorable to Plaintiff, the Court concludes no reasonable trier of fact could find Canedo acted with deliberate indifference when he directed his transfer to isolation. Thus, Canedo is entitled to summary judgment. Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 325.

### 3. Proximate Cause

In addition, the Court finds Canedo is also entitled to summary judgment because there is no genuine dispute that Canedo lacked the means and authority to be the proximate cause of Plaintiff's injuries. "An official is liable under § 1983 only if 'culpable action, or inaction, is directly attributed to them.'" *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011). As such, when resolving a claim under the Eighth Amendment against an individual defendant, causation must be resolved via "a very individualized approach which accounts for the duties, discretion, and means of each defendant." *Leer v. Murphy*, 844 F.2d 628, 633–34 (9th Cir. 1988) (citing with approval *Williams v. Bennett*, 689 F.2d 1370, 1384 (11th Cir. 1982) ("There can be no duty, the breach of which is actionable, to do that which is beyond the power, authority, or means of the charged party. One may be callously indifferent to the fate of prisoners and yet not be liable for their injuries. Those whose callous indifference results in liability are those under a duty—possessed of authority and means—to prevent the injury.")).

Here, Canedo points to undisputed evidence showing his role in Goode's transfer was simply to direct his staff to carry out the transfer ordered by medical staff. Canedo had

no part in generating the MCC ordering Goode's move to isolation. *See* Canedo Decl. at ¶ 4; Roberts Decl. at ¶ 5. It is also undisputed the MCC was prepared by medical staff and Canedo, a custodial captain with no medical training, was without authority to disregard it. *See* Pl.'s Depo at 24–25; Canedo Decl. at ¶¶ 4–5; Roberts Decl. at ¶ 5. Thus, Defendant has met his initial burden to show the absence of a genuine dispute as to proximate cause. *See Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019) (finding defendant who was instructed to simply follow protocol developed by others and who had no discretion or authority relating to the alleged conduct could not be held liable under the Eighth Amendment).

In his Opposition, plaintiff argues a genuine dispute exists because "none of the [medical staff] raised their hands and admitted to [preparing the MCC]" and because Canedo did not submit a declaration from John Hodges, the doctor whose name appears on the MCC. Pl.'s Opp. at 20. But plaintiff has not pointed to any evidence in the record showing Canedo had any part in preparing the MCC order, beyond his own speculation. Nor has Goode pointed to any evidence that shows Canedo had authority to disregard the order. *See* Pl.'s Depo. at 24–25. As discussed above, Plaintiff may not defeat summary judgment based on mere speculation or denials in the pleadings but, instead, must point to *evidence* showing a genuine factual dispute exists. *See Soremekun*, 509 F.3d at 984; *Anderson*, 477 U.S. at 249. Goode has failed to do so here.

In sum, after reviewing the evidence in the light most favorable to Goode, the Court finds no genuine dispute that Canedo lacked the discretion or ability to override the MCC order. *See Hines*, 914 F.3d at 1228. Therefore, no reasonable trier of fact could find Canedo's action was the proximate cause of Goode's injuries and as such, Canedo is entitled to summary judgment. Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 325.

### 4. *Qualified Immunity*

Canedo also argues the Court should grant summary judgment because he is entitled to qualified immunity. Def,'s P. & A. at 16–18. Government officials have qualified immunity from civil damages unless their conduct violates "clearly established statutory

or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Because Goode has failed to raise a triable issue as to whether Canedo violated his Eighth Amendment rights, there is no need to determine whether he is entitled to qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

### III.  CONCLUSION AND ORDER

For the above reasons, the Court **GRANTS** Defendant Canedo's motion for summary judgment (ECF No. 68) pursuant to Fed. R. Civ. P. 56(a) and **DIRECTS** the Clerk of the Court to enter judgment in favor of Defendant Canedo.[7]

**IT IS SO ORDERED**.

Dated:  May 1, 2024

Hon. Gonzalo P. Curiel
United States District Judge

---

[7] In his FAC, Plaintiff lists Canedo and "John and Jane Does 1–100" as defendants. FAC at 2. The body of the FAC, however, contains no specific allegations against an individual "Doe" defendant and no Doe defendants have been identified or served. *See id*. Therefore, the Court **DISMISSES** Defendants John and Jane Does 1100 for failure to prosecute. *See* Fed. R. Civ. Pro 41(b).